UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MICHAEL VINES, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 6978 |
| | ) | |
| ILLINOIS MUNICIPAL LEAGUE and | ) | |
| ILLINOIS MUNICIPAL LEAGUE RISK | ) | |
| MANAGEMENT ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Illinois Municipal League ("IML") and Illinois Municipal League Risk Management Association ("IMLRMA") (collectively referred to as "Defendants") to transfer this case to the United States District Court for the Central District of Illinois. For the reasons set forth below, the motion is denied.

### BACKGROUND

When this suit was filed in November 2009, Plaintiff Michael Vines was a 62-year-old man living in New Lenox, Illinois, a municipality within the Northern District of Illinois. Vines operated a company called The VMC Group ("VMC") and in the course of his work came to know Larry Frang, the executive director of IMLRMA.

Defendants are lobbyist organizations headquartered in Illinois's capital, Springfield, which is located in the Central District of Illinois. Through Frang, Defendants retained VMC as an independent contractor to audit their litigation costs and to assess the legal competency of outside law firms Defendants used to assist with litigation.[1]

According to the complaint, Frang did not want Vines' involvement to be restricted to performing the audit and the assessment. Instead, Frang proposed that once the audit was finished Vines would be hired in March 2009 as a full-time employee for a 6-year period, in the position of Manager of Litigation and Claims for Defendants. In this position, Vines would report not to Frang but to a woman named Ann Masters. In January 2009, Vines traveled to Springfield to meet with Frang and Masters. Vines alleges that, at that meeting, Masters expressed a desire to hire someone for the position who was approximately 30 years old and who would stay with Defendants for a period of 15-20 years.

After this meeting, Vines expressed reservations to Frang about whether he would be hired in light of Masters' comments. According to Vines, Frang assured him that the job was his. In anticipation of the move that would accompany the job, Vines

---

[1] In considering a motion to transfer related to venue, all well-pleaded allegations in the complaint are taken as true unless controverted by affidavit. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). Though Frang submitted an affidavit in support of the motion, it does not controvert any of the facts recited herein. Therefore, for purposes of this motion, we will treat Vines' allegations as true.

began to wind down VMC, and his wife began looking for a new home for them in Springfield. Vines traveled to Springfield again in February to meet with Frang and Roger Heubner, who serves as general counsel to Defendants. Vines reports that, at this meeting, Frang stated that Masters was continuing to resist Vines' employment, and Heubner postulated that Masters' reticence stemmed from a dislike for men. Approximately 3 weeks later, Frang called Vines, ostensibly at his home in New Lenox, to tell him that he was retracting the offer of employment. Vines informed Frang of his activities in winding down his business in anticipation of moving to Springfield, which, according to Vines, prompted Frang to call him back later that day and indicate that he intended to continue the hiring process with Vines despite Masters' misgivings.

In early March, Vines again traveled to Springfield for a meeting with Frang and Masters, in which Masters reiterated her desire to hire a younger candidate. About a week after this meeting, Vines, presumably from his home in New Lenox, emailed Frang regarding a start date. Frang replied that he would respond to Vines' request in short order. A week later, Frang telephoned Vines and informed him that he would not be hired to the full-time position. According to Frang's affidavit filed in support of the motion, a man named Jason Nieman was ultimately hired as the Manager of Litigation and Claims.

In the instant suit, Vines contends that Defendants engaged in age discrimination in violation the Age Discrimination in Employment Act, sex discrimination in violation of Title VII of the Civil Rights Act, and breach of contract in violation of Illinois state law. Defendants now move to transfer the case to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a).

## LEGAL STANDARD

Section 1404(a) provides that a district court may transfer civil actions to other district courts where the case could have been initially brought if the transfer advances the convenience of the parties and witnesses and the interest of justice. A party requesting transfer bears the burden of presenting particular facts and circumstances demonstrating that the transferee forum is clearly more convenient than the current forum. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). To meet this burden, the moving party must demonstrate that: (1) venue is proper in the transferor district; (2) the transferee court is in a district where the action may have been originally brought; and (3) transfer is for the convenience of the parties and witnesses and will serve the interests of justice. *Id.* Each case must be examined in light of all pertinent facts and circumstances. *Id.* at 219.

With these principles in mind, we turn to the motion at hand.

## DISCUSSION

The parties do not dispute that venue is proper in both of the districts at issue. Consequently, we will confine our analysis to an examination of whether transfer to the Central District would serve the convenience of the parties and witnesses as well as the interests of justice. As the moving parties, Defendants bear the burden of establishing that the Central District is clearly a more convenient forum than this court. *Id.* at 219-20. In addition, as defendants challenging a plaintiff's choice to litigate in a forum that is both his home and has a connection to the dispute to be litigated, Defendants must make a particularly strong showing. *See In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003); *cf. Chicago, R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). Furthermore, the two courthouses lie approximately 200 miles apart along a single interstate highway, in adjacent districts, within the same state. Defendants' arguments will need to be especially persuasive under these circumstances.

Neither § 1404(a) nor controlling case law in this circuit particularize considerations that must be taken into account when assessing the convenience of parties and witnesses. However, courts in this district have examined factors such as where material events occurred and the relative ease of access to sources of proof. *See, e.g.*, *Sassy Inc. v. Berry*, 406 F. Supp. 2d 874, 876 (N.D. Ill. 2005). District courts have also differentiated between the convenience of witnesses who are not parties or

otherwise associated with any of the litigants in the suit.  *See*, *e.g.*, *In re Nat'l Presto*, 347 F.3d. at 664; *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167-69 (N.D. Ill. 1995).

Defendants make two primary arguments in support of their request for transfer.  First, they claim that all material events took place in Springfield.  There is no question that many important events (*e.g.*, meetings between Vines, Frang, Masters, and Heubner and interviews with other candidates for the position Vines sought) occurred in the Central District.  However, the complaint also describes other events, such as the phone call in March 2009 when Frang confirmed that Vines would not be hired as a full-time employee, that did not happen exclusively in Springfield.  Defendants have offered no federal authority addressing where an alleged act of discrimination implicating two locales occurs for purposes of the law, or any Illinois statute or case giving similar guidance in cases of contracts allegedly breached.  As it is Defendants' burden to make this showing, their failure to do so permits us to conclude that some material events took place in the Central District and some in the Northern District.  Consequently, the showing on this point is not sufficient to overcome Vines' choice to bring this case in his home forum.

Defendants' second argument pertains to the relative ease of access to sources of proof.  They contend that, because Defendants' records and employees are located in Springfield, the case should be litigated there.  Defendants' access to these items,

however, is not impeded regardless of where the case is litigated. Consequently, this consideration gives no basis for disturbing Vines' choice of forum.

Should this case go to trial, the geographic proximity of the two courthouses at issue makes the convenience of the parties and witnesses a neutral consideration. Though Defendants and their witnesses will be slightly more inconvenienced in coming to Chicago than they would be if the case were in Springfield, to transfer based on that issue would only shift a comparable amount of inconvenience onto Vines and his witnesses. As the Seventh Circuit has made clear, this type of situation is not one that would warrant a transfer of venue. *In re Nat'l Presto*, 347 F.3d at 665.

Finally, the interests of justice are not advanced by transfer in this case. A judge in the Central District would not be more familiar than this court with the federal causes of action in this case, nor would he or she be more familiar with Illinois law than we would. There is no contention that this case needs to be joined with another that is already being litigated in the Central District, unlike the situation seen in cases such as *Van Dusen v. Barrack*, 376 U.S. 612 (1964). Last but not least, there is no evidence that cases in the Central District of Illinois reach resolution in a significantly shorter period of time than comparable suits in the Northern District.

Taking all of the circumstances of this case into account, we conclude that Defendants have not shown that the Central District of Illinois is a clearly more

convenient forum for Vines' suit than this court. At best, they have shown that a Springfield courthouse might be as convenient or slightly more convenient in some ways, which is insufficient to warrant transfer under § 1404(a). *Coffey*, 796 F.2d at 220. Consequently, the motion to transfer is denied.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to transfer [12] is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: ___March 18, 2010___