UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL VINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 6978 |
| | ) | |
| ILLINOIS MUNICIPAL LEAGUE and | ) | |
| ILLINOIS MUNICIPAL LEAGUE RISK | ) | |
| MANAGEMENT ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motions of Defendants Illinois Municipal League and Illinois Municipal League Risk Management Association (collectively, "IML") for summary judgment. For the reasons stated below, the motions are denied.

## BACKGROUND

Plaintiff Michael Vines ("Vines") is a 62-year-old independent consultant and founder of the Vines Consulting & Management Group, an agency providing risk management, claims administration, and insurance portfolio and litigation audits.

The Illinois Municipal League ("IML") is a not-for-profit association of 1,130 municipalities comprising Illinois cities, villages and incorporated towns. The Illinois

Municipal League Risk Management Association ("IMLRMA") is an inter-governmental association of municipalities that provides joint self-insurance and risk management services to IML members. IML and IMLRMA share a common Board of Directors.

In December 2008, Larry Frang ("Frang"), Executive Director of IML, hired Vines to audit IML's general liability and workers' compensation litigation files. IML requested the audit because their legal costs were growing at a significantly higher rate than in the past. The parties offer different accounts of the events at issue in this case. Our description of the relevant facts that are supported by admissible evidence in the record will note the existence of disputes and present each side's version of the events at issue.

According to Vines, IML hired him to independently examine the reasons of IML's surge in legal expense costs even though the organization was already using the services of Cannon Cochran Management Services, Inc. ("CCMS"), a third party administrator specialized in risk management. Vines testified that in December 2008, Frang called him to request his services in carrying out a three-phased program, which Frang described over the phone. In phase 1, Vines would be hired as an independent contractor to conduct a six-to-eight-week audit to examine IML's legal costs associated with general liability and workers' compensation. In phase 2, which was estimated to

take six months, Vines would have to formulate recommendations resulting from the audit. In phase 3, Vines would ensure that the recommendations he had formulated would be effectively implemented. With respect to phase 3, Vines claims that Frang offered him a choice: Vines could either keep the status of independent contractor or be engaged on a permanent basis as IML's Claims and Litigation Manager. As Claims and Litigation Manager, Vines would have oversight authority with respect to third party administrators. Vines testified that Frang also told him that the terms of the offer were a starting salary of $90,000 per year and an employment duration of four to six years. Frang also told Vines that the future employment proposal was to remain private for the time being because Anne Masters ("Masters"), IMLRMA's Assistant Managing Director, to whom Vines would report if hired, was looking to employ someone in their thirties. Frang also added that he would be taking care of that issue very soon and that Vines should not worry about it. Vines claims that he orally agreed to become an independent auditor for the first two phases and a permanent employee for the next six years. Vines maintains he agreed to a six-year contract because Frang was expected to retire within that time frame.

In January, 2009, Vines drove to IML's offices, in Springfield, to begin the audit. During a meeting with Frang and Masters, Vines testified that on more than two occasions Masters declared that she was looking to hire someone in the age range of

thirty to replace the outgoing Claims and Litigation Manager, Steve Ferguson ("Ferguson"). Vines did not mention anything to Masters about Frang's employment offer. A few days later, Frang and Vines had a telephone conversation in which Vines expressed his concerns about Masters wanting to hire someone in his or her thirties. Frang reassured Vines about the position and told him that when the time was right Masters would agree with Frang's decision to hire Vines.

Vines also stated that his relationship with Masters deteriorated. Vines testified that Masters gave him the cold shoulder and interfered with Vines' ability to conduct the audit. In early February 2009, Vines met with Frang and Roger Huebner ("Huebner"), IML's General Counsel, to discuss his apprehension about Masters' attitude toward him. Frang explained to Huebner that Vines had problems with Masters and that Masters was driving Frang crazy with this age issue. Vines testified that Huebner responded by telling him that "not only you're old but you're a man and she doesn't like men." Vines maintains that Huebner also indicated that IML had interviewed two well-qualified, middle-aged male candidates for the risk manager position but did not retain either one because Masters only wanted to hire a woman from the Illinois Department of Insurance with no risk management experience. Huebner testified that during that meeting he told Frang and Vines that Masters might have a problem with men.

On February 25, 2009, Frang called Vines at home to tell him that he had not been able to resolve the age issue with Masters and that he had to withdraw the employment offer. During this conversation, Frang offered to employ Vines for a year as an independent contractor. Vines felt this solution was impracticable and refused. Twenty minutes later, Frang called Vines again and told him that, after discussing the matter with Huebner, he was reiterating the initial employment offer to Vines. For the second time, Vines orally accepted the offer; Frang responded they had a deal. Frang also asked Vines to put together a report about the status of the audit so far, and to come to Springfield on March 4, 2009, to present his findings. After Vines' presentation, they would sign the necessary employment paperwork.

On March 4, 2009, Vines presented his findings according to Frang's instructions. At the conclusion of the presentation, Vines, Frang, and Masters went to lunch. During lunch, Masters asked Vines where she could find a thirty-year-old person to fill the Claims and Litigation Manager position. After lunch, Vines followed Frang to his office. Frang told him he had not yet changed Masters' opinion about the age issue, and that he needed two more days to get it resolved. On March 19, 2009, Frang called Vines and said that he was not able to solve Masters' issue with Vines' age and that he was withdrawing his offer once again.

IML recounts a different sequence of events. IML admits that in December 2008, it hired Vines as an independent contractor to perform auditing services and provide IML with recommendations pursuant to his findings. However, IML categorically denies that Vines was offered the position of Claims and Litigation Manager, that the parties reached an agreement on salary and duration of employment, or that it declined to offer Vines employment because of his sex and/or age.

According to IML, at the time Vines was retained to perform the audit, Ferguson was the Claims and Litigation Manager. Frang was not pleased with Ferguson's performance and needed to find a replacement. Another of Frang's concerns was that IML's business relationships with third party administrators had long been permeated with cronyism. Frang's purpose was to eliminate this problem by hiring a new person and introducing "new blood" in the company. Masters agreed with Frang that a new and independent mind would be a strong consideration for choosing a candidate and for curbing litigation costs. Although Masters lacked hiring authority, Frang and Masters had to consult each other during the hiring process because the position of Claims and Litigation Manager would report to Masters. Frang and Masters testified that Vines' age was never part of their discussions or decisions.

Although Vines was qualified for the position, Frang and Masters never viewed him as a potential candidate because his professional background was not detached

enough from IML's past and present third party administrators. Prior to December 2008, IML was using Martin Boyer Company ("Martin Boyer") as the third party administrator for its member-municipalities' legal claims. Vines had previously served as Director of the Liability Division for Martin Boyer. Some time in 2008, IML terminated its business relationship with Martin Boyer and engaged CCMS to serve as a new third party administrator. When Frang announced to Masters that Vines would be conducting the audit on IML's litigation expenses, Masters expressed concern about Vines' possible lack of neutrality. Masters indicated that many of the people working in Martin Boyer's claims unit now worked for CCMS's claims unit. One former Martin Boyer employee was Bob Vanselow ("Vanselow") who serves as CCMS's senior vice-president. Masters further indicated that Vines and Vanselow had concurrently been employed for several years by Martin Boyer when Vines was head of the Liability Division and Vanselow was the Director of the Workers' Compensation division. Since Vines personally knew the people that he would be auditing, Masters was worried about Vines's independence.

Frang and Masters interviewed several candidates for the Claims and Litigation Manager position. All of the candidates for the position were men. Masters eventually recommended Jason Nieman ("Nieman") for the position because she believed he had excellent skills and no previous involvement with CCMS or any third party

administrator. Frang made the final hiring decision with the advice and consent of Masters and Huebner and retained Nieman for the Claims and Litigation Manager position.

On November 5, 2009, Vines filed a complaint against IML, asserting age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and sex discrimination in violation of Title VII of the 1964 Civil Rights Act. IML now moves for summary judgment on both counts.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States.*, 25 F.3d 530, 534 (7th Cir.1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all

inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, the court may not make credibility determinations, "choose between competing inferences" or weigh the evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). With these principles in mind, we turn to the motions at issue.

## DISCUSSION

### I.  Age Discrimination

IML argues that it is entitled to summary judgment on the ADEA claim because no genuine issues of material fact exist as to the reason for IML's decision not to offer him employment. To withstand summary judgment in an age discrimination claim, plaintiff must demonstrate that his age is the "but-for" cause of the challenged employment action. *Gross v. FBL Fin. Servs.*, __ U.S. __, 129 S. Ct. 2343, 2352 (2009); *Hnizdor v. Pyramid Mouldings*, 2010 U.S. Dist. Lexis 1752544 at *4 (N. D. Ill. Apr. 30, 2010). In the instant case, the parties have offered materially conflicting evidence regarding IML's purported reasons not to engage Vines. IML argues that Vines was not offered the position because he was not removed enough from the crony-like atmosphere that characterized IML's past business relations. Vines claims that age was the determinative factor in the hiring process and that the employer's reason for refusing to hire was a pretext designed to obfuscate age-based discrimination. Summary

judgment cannot be used to resolve swearing contests between litigants. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The evidence presented by Vines creates enough issues of fact to defeat IML's motion for summary judgment on the ADEA claim. Accordingly, after examination of the admissible evidence before us, we conclude that a reasonable jury could find that Vines' age was the determinative factor in retracting the offer of employment and deny IML's motion.

## II. Sex Discrimination

IML contends that we should award summary judgment in its favor on Vines' Title VII claim because Vines has not presented any evidence that IML hired a female Claims and Litigation Manager. To establish a prima facie case of reverse gender discrimination based on the employer's failure to hire, a plaintiff must generally show, among other requirements, that the employer filled the position with an individual outside of plaintiff's class, or that the position remained vacant. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). However, there are some limited circumstances where a plaintiff may be able to establish that the employer discriminated against him "without regard to the demographic characteristics of his replacement." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996). Here, the parties do not dispute that before IML selected a person to fill the position of Claims and Litigation Manager, all the interviewed candidates were males. It is equally undisputed that Frang interviewed

and hired Nieman, a male, to replace Ferguson, another male. Nevertheless, in light of the holding in *Carson* and viewing the evidence in the light most favorable to Vines, we conclude that, at present, material issues of fact exist which preclude granting IML's motion as to Vines' sex discrimination claim.

## CONCLUSION

IML's motions for summary judgment are denied.

_[signature: Charles P. Kocoras]_

Charles P. Kocoras
United States District Judge

Dated:   January 26, 2011