UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL VINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 09 C 6978 |
| | ) | |
| ILLINOIS MUNICIPAL LEAGUE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on Plaintiff Michael Vines' ("Vines") motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a). For the reasons stated below, the motion is denied.

**BACKGROUND**

Vines, a sixty-two year old male, asserted an age discrimination claim against Defendants Illinois Municipal League and Illinois Municipal League Risk Management Association (collectively, "Defendants"). Following a jury verdict in Defendants' favor, judgment was entered against Vines on November 7, 2011. Vines now moves for a new trial, arguing that this Court erroneously excluded evidence of Vines' prior consistent statements. The Court summarizes the relevant facts below.

During the end of 2008, Larry Frang ("Frang"), the Executive Director of the Illinois Municipal League, hired Vines to complete audits for Defendants as an independent contractor. According to Vines, Frang soon thereafter offered Vines a permanent position as Defendants' Litigation and Claims Manager and then subsequently withdrew that offer. The Litigation and Claims Manager reports directly to Ann Masters ("Masters"), the Executive Director of Illinois Municipal League Risk Management Association. According to Vines, Frang told him that Masters would not hire Vines because she wanted someone younger. Vines testified that these conversations with Frang took place over the telephone.

Contradicting Vines' testimony, Frang testified that he never offered Vines a position as Defendants' Litigation and Claims Manager, never subsequently withdrew any offer, and never told Vines that Masters wanted to hire someone younger. On direct examination, Vines' counsel posed a series of questions to Frang concerning the basis for Vines' testimony, including whether Frang believed that Vines was delusional or lying. Frang speculated that Vines probably lied to prevail in his lawsuit against Defendants.

Vines then sought to introduce evidence of prior consistent statements Vines made to third parties, including his wife. Vines wanted these third parties to testify what Vines said that Frang stated in the telephone conversations. Vines claimed that he was offered a position by Frang which Frang later withdrew. Frang claimed that he

never made a job offer to Vines. This was the principal factual dispute at trial. Both Vines and Frang, during pretrial proceedings and at trial, maintained the same positions expressed above–Vines claimed a job offer was made and Frang said no job offer was made. Both Vines and Frang have always been consistent about the differences in their respective versions of the telephone conversations.

Both in pretrial rulings and at trial, the Court understood that the testimony of the third parties as to what Vines said Frang said in the telephone conversations was offered to impeach Frang. Inasmuch as none of the third party witnesses spoke to Frang and relied only on what Vines said, their putative testimony was hearsay as to Frang. Because their putative testimony did not describe anything Frang said directly to them, it was not admissible to impeach Frang. The hearsay problem precluded any such usage.

Vines moves for a new trial, arguing that the Court should have admitted testimony concerning prior statements made by Vines to third parties between December 29, 2008 and March 19, 2009 that Frang twice offered Vines a job and twice withdrew the offer because Masters wanted to hire someone younger. In his post-trial papers, Vines now argues that he was the declarant for purposes of Federal Rule of Evidence 801(d)(1)(B) ("Rule 801(d)(1)(B)") and the third party putative testimony about the phone conversations was admissible to rebut an express or implied charge against Vines of recent fabrication or improper motive.

- 3 -

**LEGAL STANDARD**

After a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Where a court erroneously excludes evidence, a party is only entitled to a new trial if a significant chance exists that the error affected the outcome of the trial. *Schick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 611 (7th Cir. 2002); *see* Fed. R. Civ. P. 61. (stating that an error in excluding evidence presents no ground for a new trial unless justice otherwise requires and directing courts to disregard errors that do not affect a party's substantial rights).

**DISCUSSION[1]**

Vines argues that this Court erroneously excluded evidence which was admissible under Rule 801(d)(1)(B). A trial judge retains broad discretion in determining the admissibility of evidence under Rule 801(d)(1)(B). *Christmas v. Sanders*, 759 F.2d 1284, 1287 (7th Cir. 1985). Under Rule 801(d)(1)(B), an out-of-court statement is not hearsay if: (1) the statement is consistent with the declarant's trial testimony; (2) the statement is offered to rebut an express or implied charge of recent fabrication or improper motive against the declarant; (3) the statement was made before

---

[1] Defendants argue that Vines' motion is untimely. Vines must have filed his motion for a new trial no later than 28 days after the clerk entered judgment in the civil docket. *See* Fed. R. Civ. P. 58(a), 58(c), 59(b). Because the clerk entered judgment on November 7, 2011, Vines timely filed his motion 25 days later, on December 2, 2011.

the declarant had a motive to fabricate; and (4) the declarant testifies at trial and is subject to cross-examination about the statement. *United States v. Foster*, 652 F.3d 776, 787 (7th Cir. 2011). Either the declarant or a third party may introduce a statement admissible under Rule 801(d)(1)(B). *United States v. Green*, 258 F.3d 683, 692 (7th Cir. 2001) (overturning previous holding forbidding a third party from testifying about the declarant's prior consistent statement).

Vines' prior consistent statements fail to satisfy Rule 801(d)(1)(B) for several reasons. First, Vines did not offer the evidence for a permissible purpose under Rule 801(d)(1)(B). Vines wants the otherwise hearsay statements of Frang that Vines said Frang made to Vines through the lips of additional witnesses to discredit Frang. Counsel for Vines seeks to do indirectly what they cannot do directly. Among other reasons, the claim that this evidence is offered to rebut an express or implied charge against the declarant of recent fabrication or improper motive is specious. Vines has been consistent in his position from the beginning. In the end, it was Vines' word against Frang's word and the jury chose to believe Frang.

Second, Vines could not have offered the statements to rebut a charge of recent fabrication or improper motive because no such charge was made by Defendants. *See Tome v. United States*, 513 U.S. 150, 157-58 (1995) (explaining that a party can introduce a witness's prior consistent statement only to rebut a charge of recent fabrication or improper motive). Vines sought to introduce his prior consistent

statements to rebut an allegation his own counsel elicited from Frang on direct examination. Responding to a series of questions presented by Vines' counsel concerning the basis for Vines' testimony, including whether Frang believed that Vines was delusional or lying, Frang speculated that Vines probably lied to prevail in his lawsuit against Defendants. Vines cannot offer ordinarily inadmissible prior consistent statements where his own counsel elicited testimony from Frang in an attempt to open the door to the inadmissible evidence. *Cf., e.g., United States v. Anderson*, 303 F.3d 847, 859 (7th Cir. 2002) (holding that government properly introduced witnesses' prior consistent statements after defense counsel impeached the witnesses with a charge of recent fabrication or improper motive and, thus, opened the door for the admission of prior consistent statements). Further, neither party disputes that Frang's contradictory testimony, alone, did not give rise to a charge of fabrication. *See United States v. Bao*, 189 F.3d 860, 865 (9th Cir. 1999) (citation omitted); *see also United States v. Quinto*, 582 F.2d 224, 234-35 (2d Cir. 1978). Additionally, neither party could dispute that the testimony of Vines and Frang was so diametrically opposed that the conflicting testimony necessarily carried the implication that the other was lying. Frang's acknowledgment of the contradictory testimony and its obvious implication does not convert his merely contradictory testimony into a charge of recent fabrication resulting from an improper motive. For these reasons, Vines did not offer the statements to rebut

a charge of recent fabrication or improper motive because no such charge was made by Defendants.

Finally, no intervening event presented Vines with a motive to fabricate. Vines argues that an intervening motive to fabricate arose between his prior statements and his trial testimony when he contemplated filing a lawsuit against Defendants. Vines relies on *Kessler v. Riccardi*, 363 F. App'x 350 (6th Cir. 2010) and *Phoenix Associates III v. Stone*, 60 F.3d 95 (2d Cir. 1995). In *Kessler*, plaintiff alleged that defendant retaliated against her after she reported his sexual harassment to their employer. 363 F. App'x at 353. At trial, the court permitted defendant to testify that he told his boss and wife that he was having a consensual affair with plaintiff before she complained to their employer. *Id.* at 359. The Sixth Circuit held that the district court properly admitted defendant's testimony under Rule 801(d)(1)(B) to rebut plaintiff's accusation that defendant lied about the affair to protect himself. *Id.*

In *Phoenix*, plaintiffs and defendant each owned fifty percent of a magazine. 60 F.3d at 99. After the magazine failed, plaintiffs sued defendant for breach of an oral agreement because defendant allegedly agreed to pay, and owed plaintiffs, half of the magazine's expenses. *Id.* at 99-100. At trial, defendant's counsel charged plaintiffs with recently fabricating the existence of the oral agreement after the magazine collapsed. *Id.* at 104. To rebut defendant's charge, plaintiffs sought to introduce memoranda drafted by one plaintiff while negotiating with defendant which discussed


defendant's oral agreement to pay half of the magazine's expenses. *Id.* at 100. The Second Circuit held that the district court improperly excluded the memoranda as evidence under Rule 801(d)(1)(B). *Id.* at 104. Specifically, the memoranda rebutted the charge that plaintiffs recently fabricated the oral agreement after the magazine's collapse because the memoranda were drafted long before the magazine failed and, thus, before a motive to fabricate arose. *Id.*

Vines' reliance on *Kessler* and *Phoenix* is misplaced. *Kessler* and *Phoenix* each involved an external intervening event that presented a motive to fabricate for a specific reason. Specifically, in *Kessler*, plaintiff's complaint to defendant's employer of sexual harassment gave defendant a motive to lie to protect himself and, in *Phoenix*, the magazine's demise gave plaintiffs a motive to lie to minimize their losses. Here, unlike in *Kessler* and *Phoenix*, no external event presented Vines with a motive to fabricate. Vines contends that his internal decision to file a lawsuit created a motive to fabricate. However, Vines cites no case which has held that the plaintiff had a motive to fabricate within the meaning of Rule 801(d)(1)(B) upon deciding to file a lawsuit. Theoretically, the same motivation could have existed in *Phoenix* but the court found that the magazine's demise gave plaintiffs a motive to fabricate, not their decision to file a lawsuit.

Additionally, in *Kessler* and *Phoenix*, the intervening event triggered each declarant's motivation to lie, so that an accusation of sexual harassment motivated the

*Kessler* defendant to lie to protect himself and a business's failure motivated the *Phoenix* plaintiffs to lie to minimize their losses. Here, however, the purported intervening event could not trigger Vines' motive to lie because any such motive would have existed before, or at least contemporaneously with, Vines' decision to file a lawsuit. Thus, no intervening event occurred which would have triggered a motive to fabricate within the meaning of Rule 801(d)(1)(B).

## CONCLUSION

For the foregoing reasons, this Court denies Vines' motion for a new trial.

*[signature: Charles P. Kocoras]*

Charles P. Kocoras
United States District Judge

Dated: March 6, 2012